Warren V. Norred (Admitted PHV)
wnorred@norredlaw.com
NORRED LAW, PLLC
200 East Abram, Suite 300
Arlington, Texas  76010
Telephone: (817) 704-3984
Facsimile: (817) 524-6686

Matthew C. Lapple (Bar No. 193546)
matt@lappleubell.com
Ha Tran Lapple (Bar No. 225022)
ha@lappleubell.com
LAPPLE UBELL IP LAW, LLP
19800 MacArthur Boulevard, 3rd Floor
Irvine, California  92612
Telephone: (949) 756-4889
Facsimile: (949) 242-9789

Attorneys for Defendant LURACO, INC.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

| | |
|---|---|
| ECOJET, INC.,<br><br>       Plaintiff,<br><br>vs.<br><br>LURACO, INC.,<br><br>       Defendant. | Case No. 8:16-cv-00487-AG-KES<br><br>The Honorable ANDREW GUILFORD, District Judge<br><br>**DEFENDANT LURACO'S CLOSING ARGUMENT**<br><br>Trial: November 2–3, 2017 |

CONTENTS

I.    INTRODUCTION ........................................................................................... 1

II.   BACKGROUND ............................................................................................. 2

    A.   The parties differ on three claim limitations of the Patent-in-Suit ....... 2

    B.   Luraco sells two product lines which must be evaluated separately .... 4

III.  ARGUMENT AND TRIAL EVIDENCE ....................................................... 5

    A.   Luraco's products do not contain the wall limitation .......................... 6

    B.   Luraco's Magna-JET pumps do not contain the slope element.......... 10

    C.   Luraco's Magna-JET pumps do not contain the housing element. .... 16

        1.   The claimed housing element is not present in Luraco's Magna-JET products................................................................. 16

        2.   Ecojet consented – by its conduct at trial – to trying the claim element of the required housing in the Magna-JET products................................................................................... 18

        3.   Luraco's *pleadings* support the trial of this claim element. .... 18

    D.   Ecojet abandoned 'willful infringement" and Luraco did not willingly infringe................................................................................ 19

    E.   Even if infringement is found, an injunction in this case is inappropriate ..................................................................................... 20

        1.   Ecojet has suffered no irreparable injury................................. 21

        2.   Monetary damages are perfectly adequate in this case. .......... 22

        3.   A balancing of hardships militates against a permanent injunction. ............................................................................... 22

        4.   The public interest is best served by without an injunction. .... 22

    F.   Ecojet's behavior merits its designation as an exceptional case......... 23

    G.   The ongoing re-examination of the Patent may make this case moot............................................................................................... 24

IV.   CONCLUSION AND PRAYER.................................................................. 24

1

# TABLE OF AUTHORITIES

2

<u>Cases</u>

3

*Apple Inc. v. Samsung Elecs. Co.*,
    678 F.3d 1314, 1324 (Fed. Cir. 2012) ............................................................ 21

4

5

*Cole v. Kimberly-Clark Corp.*,
    102 F. 3d 524, 528 (Fed. Cir. 1996) ................................................................. 5

6

*eBay Inc. v. MercExchange, L.L.C.*,
    547 U.S. 388, 391 (2006) .............................................................................. 21

7

8

*Kokomo Fence Machine Company v. Kitselman*,
    23 S. Ct. 521 (1903) ........................................................................................ 6

9

*State Bank of Chicago v. Hillman's*,
    180 F. 732, 736 (7th Cir. 1910) ...................................................................... 6

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **Prefatory Note regarding Exhibits and Other References**

Defendant concurrently files the declaration of Warren V. Norred ("Norred Declaration") along with excerpts from transcripts of the first and second days of trial, attached to the Norred Declaration as "Exhibit 1" (also referenced as "TR1") and "Exhibit 2" (also referenced as "TR2"), respectively.

The following brief also refers to trial exhibits now in the Court's possession, which Defendant shall reference by the exhibit numbers they were given at the time of admission during trial. A list of these exhibits are also set forth in the transcript excerpt of the first day of trial. (*See* Exh. 1 to Norred Declaration at 3.)

This brief also refers to documents in Clerk's record using the respective document numbers. For example, the Court's claim construction order is referenced as "Doc. 60."

# I.      INTRODUCTION

In the initial closing brief of Plaintiff Ecojet Inc. ("Pltf's Closing Br.," Doc. 158), Ecojet posits that Luraco, Inc., makes spa pumps that willfully infringe claims 4 and 20 of Ecojet's U.S. Patent RE45,844 ("Patent-in-Suit"). Defendant Luraco hereby responds by requesting that the Court enter judgment against Ecojet, declare that Luraco's products do not infringe the Patent-in-Suit, find that this case is exceptional, and award attorney fees to Luraco.[1]

Luraco denied the infringement allegation by pointing to the fact that its five models of accused products do not practice every element of the referenced claims and further responded with a declaratory-judgment claim for non-infringement and sought a finding that this is exceptional case entitling Luraco to seek attorney fees.

During trial, Luraco provided evidence to show that its accused devices lacked the "wall" and "slope" limitations common to claims 4 and 20. In addition, Luraco provided evidence that two of its five accused products (referred to as its "Magna-Jet" line of products) do not include the "housing supporting a motor" limitation disclosed in the referenced claims. Ecojet did not object to evidence, questions, testimony, or argument based on any lack of supporting pleadings regarding the motor-supported housing limitation *until after both sides had closed*. Luraco therefore asserts now that the issue was tried by consent pursuant to Rule 15(b)(2), even if that specific defense was not part of the pre-trial documentation.

Luraco also provided evidence and argued at trial that Plaintiff waived its willful-infringement claim. (Even on the merits, such a claim must fail.)

Ecojet further failed to show that Luraco's accused devices were purchased because of the allegedly infringing features. Thus, Ecojet is not entitled to lost profits for patent infringement, to a reasonable royalty, or to an injunction, even if the Court previously established the rate of a reasonable royalty.

---

[1] Luraco also notes herein that an ongoing reexamination of the Patent has recently resulted in an office action rejecting the claims on which this suit depends.

## II.   BACKGROUND

The parties sell pipeless spa pumps that include a housing cap with inlet and discharge ports and are designed to churn water in a spa. Third-Party Lexor, Inc. developed a spa motor around 2004 and filed a patent application thereon that it later assigned to Plaintiff Ecojet. The Patent-in-Suit was granted January 16, 2016.[2] Luraco developed its products around 2007, and has been a market leader in spa pumps based on a novel magnetic drive which Ecojet has adopted in its pumps.

### A.   The parties differ on three claim limitations of the Patent-in-Suit

Plaintiff Ecojet's closing-brief boast regarding characteristics of the patented invention (e.g., number of components and ease of cleaning) are irrelevant to the Patent-In-Suit and the three disputed limitations[3] from independent claims 4 and 20.

Excerpts of claim four are listed below, with relevant portions underlined:

a) a <u>housing supporting a motor</u> rotatably coupled to an impeller so as to drive the impeller about an axis, the <u>housing comprising a shoulder configured to mount the housing to a wall of the pedicure chair or whirlpool bath so that a housing front part extends into the basin;</u>

b) a cap having an outer surface, an inner surface, and a circumferential rim, <u>the cap releasably engaged with the housing front part so as to define an interior chamber between the cap inner surface and a housing inner surface of the housing front part,</u> the cap comprising a plurality of spaced-apart holes formed through the cap and defining an inlet aligned with the axis, <u>a wall being formed circumferentially on the inner</u>

--------

[2] The Patent-in-Suit has a convoluted history that includes a series of applications, including one that was abandoned, another continued, and a granted patent that was surrendered during the prosecution of the Patent-In-Suit.

[3] This brief uses the terms "limitations" and "elements" interchangeably, noting that an element of an invention may be described among several limitations, but herein intending no meaningful difference between the terms.

1    surface of the cap surrounding the plurality of spaced apart holes of the

2    inlet between the holes of the inlet and the circumferential rim,…;

3    c)   the housing inner surface comprising a flat portion that lies in a plane

4    normal to the axis and has a reference slope, and an inclined portion

5    disposed radially outwardly from the flat portion, a first point on the

6    inclined portion having a first slope that is greater than the reference

7    slope, the housing inner surface terminating at an outer edge and having

8    a second slope at or adjacent the outer edge, the second slope being

9    greater than the first slope;

10   The disputed limitations of claim 20 are similarly marked up here:

11   a)   a housing supporting a motor rotatably coupled to an impeller so as to

12   drive the impeller about an axis, the housing comprising a shoulder

13   configured to mount the housing to a wall of the pedicure chair or

14   whirlpool bath so that a housing front part extends into the basin;

15   b)   a cap having an outer surface, an inner surface, and a circumferential

16   rim, the cap releasably engaged with the housing front part so as to

17   define an interior chamber between the cap inner surface and a housing

18   inner surface of the housing front part, the cap comprising a plurality of

19   spaced-apart holes formed through the cap and defining an inlet

20   disposed at and adjacent the axis, a wall being formed by the inner

21   surface of the cap between the plurality of spaced apart holes of the

22   inlet and the circumferential rim, the wall **extending** circumferentially

23   so as to substantially surround the holes, and an outlet opening is

24   radially spaced from the inlet, the outlet opening communicating with a

25   nozzle formed on the outer surface of the cap;

26   c)   the housing inner surface extending radially outwardly from the axis

27   and terminating at a circular outer edge, a first portion of the housing

28   inner surface being radially spaced a distance from the axis and having

a first slope relative to a plane defined normal to the axis, a second portion of the housing inner surface disposed radially outwardly from the first portion and defined at and adjacent the outer edge, the second portion of the housing inner surface at a point along the second portion having a second slope relative to a plane defined normal to the axis, <u>the second slope being greater than the first slope</u>;

The first two disputed elements in claims 4 and 20 are worded similarly, though the wall limitation requires that it is "extending" from the inner surface of the cap in claim 20. This document will refer to these disputed limitation elements as the "housing element," the "wall element," and the "slope element," respectively.

### B.    Luraco sells two product lines which must be evaluated separately

Luraco entered the spa industry around 2007, becoming successful with its Dura-JET line of products around 2009. In this suit, the Dura-JET III with LED lights, the Dura-JET III without LED lights, and the Dura-JET 4 are three of the accused products. Installation of the Dura-JET pumps require a hole in a spa basin, and the head of the pump extends into the tub, where the cap's inlet and outlet holes take in and expel water.

Luraco became the spa pump industry leader by developing the Magna-JET line of products around 2009. This product line was revolutionary because it employed magnetic coupling between the motor and the impeller so that the motor for the pump can be mounted on a wall outside a spa tub. An impeller fixed inside a housing is set in place on the inside of a spa tub directly opposite the pump's location. The pump motor rotates a magnetic element outside the spa tub which magnetically drives the impeller inside the housing on the inside of the spa tub. This approach has many advantages, in that the user can optionally mount the motor-supporting housing on the outside of the tub without drilling a hole in the basin and, even if the hole-construction is used, the housing with the impeller still is a entirely separate piece physically held in place by the magnetic draw of the motor's rotating

1   magnet drive. A user can remove the impeller housing from the interior of the tub for

2   cleaning and replacement, and use disposable liners to provide better sanitation. The

3   impeller housing does not support the motor and physically is not part of the

4   shoulder or pump structure but rather is completely separate in its construction.

5   　　Both product lines have historically used the same cap, so discussion of the

6   claim elements concerning the wall element is the same for all accused products, as

7   the wall element is part of the cap. However, the interior base surfaces of the

8   impeller cavities differ. The court should note that the Dura-JET product *drawing*

9   has a gradual curve on its interior side wall which never reaches a 90-degree angle

10   with respect to the reference slope, the *actual product* <u>does</u> reach the 90-degree

11   angle, as the specimen lodged with the Court shows. (*See* Exh. 20 and 25.) The

12   Magna-JET products have a flat floor, and the interior wall of the base has a fillet

13   which transitions the floor to a 90-degree-angled wall with respect to the flat floor

14   (the reference slope). The vertical interior walls of both uses constitute ***undefined***

15   slopes that cannot be said to be greater than the "first slope" or any slope.[4]

16   　　Thus, Luraco asserts that the Dura-JET products are missing the wall and

17   slope elements, and the Magna-JET products miss those, as well as the described

18   housing[5] element, the wall element, or the slope element disclosed in claim 4 and 20.

19   **III.   ARGUMENT AND TRIAL EVIDENCE**

20   　　Patent infringement must be proved by a preponderance of the evidence and

21   requires a court to determine the scope of a patent's claims, followed by an analysis

22

23   ────────────

    [4] Plaintiff's counsel stated that there was no dispute that the Dura-JET products
    have the slope element during trial (see TR1 15:2-6), but that misstates Luraco's
24   position. The Dura-Jet drawing shows the slope element, but the products do not.

25   　　[5] In this closing brief, "housing" is used in reference to the motor-supporting
    housing and to the housing front part. They are one element with the Dura-JET but
26   two distinct pieces in the Magna-JET pump. Luraco will use the terms "housing front
    part," "impeller housing," or impeller housing" interchangeably to refer to the
27   element onto which the cap is affixed.

28

1    regarding whether the properly construed claims encompass the accused structure.

2    *Cole v. Kimberly-Clark Corp.*, 102 F. 3d 524, 528 (Fed. Cir. 1996).

3        However, the Supreme Court has instructed that infringement requires "a

4    concurrence of means and operation as well as result." *Kokomo Fence Mach. Co. v.*

5    *Kitselman*, 23 S. Ct. 521 (1903). Lastly, a patent provides for protection as described

6    by the specification and drawings; a patentee cannot enlarge his patent to

7    monopolize something more than his invention. *State Bank of Chicago v. Hillman's*

8    180 F. 732, 736 (7th Cir. 1910), cited with approval in *Craftint Mfg. Co. v. Baker*, 94

9    F.2d 369 (9th Cir. 1938).

10       Though Luraco argues below that its products to not read on the Patent-in-

11   Suit, the above-cited cases militate against the "I claim all spa pumps because they

12   all have curved housing and walls *of some sort*" approach to infringement.

13       **A.    Luraco's products do not contain the wall limitation.**

14       The "wall element" as described in claims 4 and 20 with the same wording, as

15   *"a wall being formed circumferentially on the inner surface of the cap."* This

16   Court examined the history of the wall element and the prosecution history that was

17   required to obtain a patent in its order regarding claim construction in its *Markman*

18   ruling. (Doc. 60, incorporated herein by this reference.) There, the Court observed

19   that the USPTO rejected any argument that the wall structure was something other

20   than a physical wall that projects from the cap's interior. (*Id.* at 6.)

21       The Court's ruling noted that the parties recognized that the wall is not

22   imaginary and also noted that the applicant tried to recapture an invention without a

23   "wall" element despite specifically arguing that the wall was a necessity during

24   earlier prosecution, and the USPTO rejected that attempt. (Doc. 6 at 6–7.)[6]

25       The wall described in independent claims 4 and 20 was determined by the

26

27       ――――――――――――――
         [6] Citing the *Inventor's Response to Office Action*, July 6, 2015 (Doc. 40-1 at

28   111-12) and *Non-Final Rejection*, February 6, 2015 (Dkt. 40-1 at 152).

1  Court to mean "a dividing structure that separates a volume." (*Id.*) This Court also
2  issued summary judgment of non-infringement under the doctrine of equivalents in
3  its *Order re Motions for Summary Judgment* (Doc. 124 at 13, § 3.5.3). Ecojet cannot
4  argue that the Luraco infringed the Patent by creating a tight passage for water flow
5  and such a construction is equivalent to the wall element.

6      Yet even in the initial closing brief, Plaintiff's counsel argues, in regard to the
7  wall limitation, "But as Your Honor knows, that makes really no difference. As to
8  the fact that it can be done differently does not have any relevance to whether or not
9  the accused devices practice this element." (TR1 13:8–11.) Ecojet's expert witness
10  demonstrated this same misunderstanding when he admitted he had no knowledge of
11  the prosecution history or that its prosecution might require a patentee to abandon
12  subject matter. (TR1 92:21-93:11; *see also* TR1 73:22-25.)

13      Ecojet provided an animated model for the Court (to which Luraco objected).
14  That animation and the ensuing discussion at trial shows the Court that the Ecojet
15  expert had not modeled the Luraco pumps to show the necessity of some wall
16  element ("a dividing structure that divides a volume" as the Court's claim
17  construction requires). Rather, the animation demonstrated nothing more than an
18  argument that every pump has a wall. Of course, the patent claim construction did
19  not include that position. Rather, the claim requires a circumferential wall that can be
20  seen as a dividing structure on the cap's interior and not a structure that provides a
21  low and high pressure area using the impeller housing floor, impeller housing
22  ceiling, and impeller, which is the approach taken by Luraco's pumps.

23      Ecojet's expert further revealed his fatal misunderstanding of how the Patent-
24  in-Suit was prosecuted and why it matters in this case when he stated that the wall
25  element could be a barrier or a mere guide for the water, and admitted that he
26  interpreted every physical kind of structure between an inlet and outlet as a wall
27  element (TR1 107:1-108:2). Eventually, Dr. Johnson even posited that a wall
28  element could be *flat*. (TR1 142:7–144:8; *see also* TR1 71:22–72:8.) Even Ecojet's

1   Closing asserts all pumps have a wall element, suggesting the wall limitation is

2   superfluous. (Doc. 158, 9:4-10.)

3       As the prosecution history shows, Ecojet cannot use just any physical structure

4   which is between the inlet and outlet, but must be a dividing structure that separates

5   a volume that is located ***on the interior of the cap***. Dr. Johnson argued that the wall

6   element can be considered to include a guiding structure comprised of the proximity

7   of the base housing and the cap together. But the claim does not allow such an

8   interpretation, and the prosecution history militates against this approach. The wall

9   element is part of the cap – and the cap only.

10       Dr. Johnson also ignored that claim 20 requires that the circumferential wall

11   'extend' from the cap's interior. Though he discusses how a pump works, and states

12   that the Luraco pumps have the wall, he never addresses ***how*** the Luraco pumps have

13   a wall that "extends" from the cap's interior. (*See* TR1 49:3–20.)

14       Fortunately for Luraco, the Patent-in-Suit prosecution history compares a cap

15   with a profile very similar to the Luraco cap as part of the inventor argument that the

16   physical wall was required. In the inventor's amendment dated March 30, 2011

17   (admitted during trial as Exh. 105) starting at EJ000033), the inventor compares Fig.

18   20 of his invention to a hypothetical Fig. 20 without Wall 52 and argues that the wall

19   is needed in his invention. Inventor further argues that the Chen structure which the

20   examiner had employed in the previous rejection did not have a raised wall.

21       The present invention claims a wall 52 formed circumferentially on the inner surface of the

22   cap.   The *Chen* reference does not suggest nor disclose any structure which can be understood to be a

23   wall as claimed.   The area 41 is the inner surface of the cover 40 between the inlet slots 42.   It is not

24   raised above the inner surface but actually is the inner surface.   The slots 42 in *Chen* serve the same

25   function as the openings 54 in the present application.   The present application claims the

26   circumferential wall on the inner surface surrounds the inlet opening between the inlet opening and the

27   rim as shown in the attached marked FIGS. 18-20.

28           (Excerpt from Trial Exhibit 105, p.EJ000033.)

1    As the Court can see, the profile of the hypothesized version of the

2    Lexor/Ecojet cap nicely matches that of the current Luraco cap. If the inventor was

3    correct in his assertions while prosecuting the Patent-in-Suit and the version of Fig.

4    20 on Exhibit 105 at page EJ37 has no wall, then neither does the Magna-JET cap, as

5    it is nearly identical to the hypothetical profile, as shown in the three figures below,

6    which clearly demonstrate that the profile of the accused Luraco cap is nearly an

7    exact match to the "no wall" construction as shown directly above which the inventor

8    vigorously claimed had no wall during prosecution.



Fig. A



Fig. B



Fig. C

1    As the Court observed in its *Markman* ruling (Doc. 60 at 4–7), the inventor
2    received his patent by differentiating his invention (Fig. A) from prior art (Fig. B) by
3    arguing that his pump had a wall that was raised above the inner surface. The Court
4    order quoted the inventor's argument, "if the wall 52 were not present, the water
5    would not be directed to the outlet and the water could even enter through the
6    outlet." (Doc. 60 at 6 [citing Resp. to Office Action, Doc. 40-3 at 82].) The Luraco
7    profile (Fig. C) shows best matches the hypothetical "no wall" illustration (Fig. B).

8    The Patent-in-Suit's original inventor, Christopher Luong, even testified that
9    the wall included all the space between the inlet and outlet, again ignoring the claim
10   language of his own patent. (TR2 20:14-19.) However, Luong admitted that a shorter
11   wall in his own spa pump, the Pure-Flo, does not mean that the pump does not
12   function, but only that it did not function as well. (TR2 21:2-8; 25:10-25; 28:4-24.)

13   In summary, with respect to the wall element, the evidence at trial showed the
14   Luraco cap's interior profile is identical to the "no wall" cap used in the Patent-in-
15   Suit's prosecution, where the inventor argued such a profile had ***no wall*** and would
16   not work and that a wall extending from the cap was necessary – an argument critical
17   to the allowance of what is now claim 4, and having benefited from that argument,
18   Ecojet cannot argue that a cap with an identical profile (Fig. B) now ***has*** a wall due
19   to mere function in separating inlet and outlet water by using a shorter ceiling height.

20       **B.    Luraco's Magna-JET pumps do not contain the slope element.**

21       The full language of the slope limitation is repeated for ease: …the housing
22   inner surface comprising a flat portion that lies in a plane normal to the axis and has
23   a reference slope, and an inclined portion disposed radially outwardly from the flat
24   portion, a first point on the inclined portion having a first slope that is greater than
25   the reference slope, the housing inner surface terminating at an outer edge and
26   having a second slope at or adjacent the outer edge, the second slope being greater
27   than the first slope;" (Underlining added for emphasis.)

28

Critical to this limitation are the points where the slopes are measured. The claim limitation requires a reference slope, a first slope, ***and*** a second slope. The parties agree that the reference slope is defined by the flat portion of the housing cap floor normal to the cap's axis. The parties also agree that the first slope is somewhere on the fillet after it begins to incline.

However, the parties dispute the location where the second slope must be measured. Ecojet states "the second slope need not be calculated at the lip of the bottom portion, or alternatively, the '844 patent contemplates that the second slope can approach perpendicular to the reference slope and still be considered to be greater than the first slope." (Doc. 158, 14:7-14.) Ecojet's expert supported that conclusion by ignoring the claim language which states the second slope measurement is "at or adjacent the outer edge." Instead, he incorrectly locates it near the top of the fillet, before the housing surface becomes vertical, apparently so he can then conclude that the second slope is definitively more than the first slope.

```
14   Q.   And the next component of this claim is the second slope
15   being greater than the first slope.  Do the accused products
16   embody that element?
17   A.   Yes, they do.
18   Q.   Can you show us where?
19   A.   Yes.  That's again in the fillet there going from
20   horizontal in this case.  Coming through and up toward the
21   top, it has a slope that is steeper than it does where it
22   joins into the flat portion of the housing.
23   Q.   Could that flat portion also be the second incline
24   portion?
25   A.   It could be.
```

(TR1 45:14-25.)

1   However, the claim plainly states that the second slope is measured "at or

2   adjacent the outer edge," and the second slope must be greater than the first slope.

3   Ecojet may not disregard claim language by referring to the embodiment disclosed in

4   its patent application. Luraco provided Ecojet specimen caps, and Ecojet's expert

5   witness could have measured the slopes, but his testimony is bereft of such action.

6   Ecojet mischaracterizes Luraco's argument. (Pltf's Closing Br. at 12.

7   ["Luraco does not contest that there are two points on the fillet with differing slopes,

8   with the second slope greater than the first. Ex. 2 [TR1 44:20-45:25]."].) In fact,

9   Ecojet does not have any evidence to support its mischaracterization but, instead,

10   relies upon its own expert's testimony under direct examination by Ecojet's counsel.

11   The reference is nothing more than a statement by Johnson that he can look at the

12   fillet on the Luraco interior corner and find a curve with two points on it. Johnson

13   admits that the interior housing surface is vertical past the fillet, which is a

14   transitional construction while discussing the second slope:

```
7        Do the accused products embody that element?
8   A.   Yes, they do.
9   Q.   Can you show us where?
10  A.   Yes.  So at the end of that transitional point where it
11  is transitioning from flat to vertical in this case, there is
12  a point on that fillet, I could call it, that does have a
13  slope greater than the first slope of the fillet.
```

(TR1 46:7-13.)

21   Ecojet's expert admitted that the Dura-JET product's interior vertical wall

22   transitions to the vertical as well:

```
17        Does the -- does Exhibit 20 embody those elements?
18  A.   Yes, it does.
19  Q.   Can you show us where?
20  A.   Yes.  That would be right here at the transitional point
21  where the wall goes, if I'm holding it this way, vertical.
```

(TR1 63:17-21 [EXH. 20 is a Dura-JET model].)

1   The accused Luraco pumps have a flat housing floor and then a small

2   transitional fillet (the Magna-JET) or a more gradual curve (the Dura-JET), both of

3   which end at a clearly vertical wall extending to the top edge of the interior surface.

4   One can see that the housing walls of both products are vertical at every point that

5   might be considered "at or adjacent the outer edge." The top of the fillet cannot be

6   considered at or adjacent the outer edge.

7   During cross, Johnson further admitted the impeller housing wall close to the

8   housing's outer edge was at least "near vertical" and never gives a measurement.

```
 2   Q.   Let me interrupt you, then.  Isn't the slope, the second
 3   slope, at or adjacent to the outer edge?
 4   A.   Sure.
 5   Q.   So we note that the second slope is adjacent to -- or,
 6   what's the phrasing?  Second slope being greater than the
 7   first slope, but it is at or adjacent to the outer edge.  At
 8   or adjacent the outer edge.  Now, what is at or adjacent the
 9   outer edge?
10   A.   To me that would mean right here in this vicinity.
11   Q.   Right.  And it's going to be at or adjacent.  Now,
12   what's the slope at that point?
13   A.   This slope right here?
14   Q.   Right.
15   A.   It's near vertical the way this is drawn.
```

(TR1 85:2-15.)

22   Again, Ecojet mischaracterizes Luraco's argument. (Doc. 158, 13:187-14

23   ["According to Luraco's construction, if the outer edge is the lip of the bottom

24   portion, it is vertical, meaning it has an indeterminate slope, which cannot be greater

25   than the first slope."].)

26   Luraco's testimony and argument has always been that the claim 4 and 20

27   require "a second slope at or adjacent the outer edge, the second slope being greater

28   than the first slope," and that the phrase "at or adjacent the outer edge" means near to

the top of the housing. After a protracted discussion regarding the location of the slopes and where they should be measured, Dr. Johnson on the stand admitted that: a) the second slope is adjacent to the wall of the outer edge (TR1 86:9-10), b) the "outer edge" is the "outer edge of the chamber" (TR1 87:24-25), c) the second slope is undefined and neither positive or negative when compared to the reference slope (TR1 91:23-92:2), an undefined number cannot meaningfully be said to be greater or less than another number (TR1 92:9-14), and d) the accused Magna-JET impeller housing is vertical at or adjacent the outer edge – i.e., has a 90-degree angle between the second and the reference slopes (TR1 91:20-22):

```
20   Q.    Okay.  So we have a 90-degree angle between the second
21   slope and the reference slope; is that correct?
22   A.    That's right.
```

Opposing counsel has argued that Luraco's argument regarding the undefined slope is meritless in part because no real-world angle is perfectly 90º (see Doc. 158 at 14:14-15 and 9:17-22), but that asserted observation does not rescue Ecojet's argument. If the upper portion of the interior wall of the impeller housing forms an 89.999º angle with respect to the reference slope, the second slope near the outer edge would be a large negative number and thus less than the first slope on the fillet, which can only be a positive number. Though a vertical wall has an undefined slope, a *nearly* vertical wall which is unmeasured cannot be said to have a positive or negative slope and cannot be meaningfully compared to any defined first slope.

This Court already examined this issue at the *Markman* hearing and rejected Ecojet's construction of "inclined portion" to allow a vertical wall, as such a wall would have an undefined slope and be inconsistent with the claim language in the order that followed. (*See* Doc. 60 at 11, ¶4.) The Court now has evidence and testimony by all parties. An examination of the Luraco impeller housing profile shows that the fillet is not even half the interior wall height, which is vertical for the majority of its rise.  As can be seen by this graphical summary of the testimony using

1    Trial Exhibit 117, which has been annotated to indicate the locations identified

2    during Dr. Johnson's testimony to show that his initial testimony (i.e., that the

3    second slope should be measured at the top of fillet) is not supportable, since that

4    location is not "at or adjacent the outer edge."



11   Finally, Ecojet's owner and the named inventor, Christopher Luong, also

12   initially tried to place the first and second slopes in the fillet. But, when confronted

13   with his own claim language requiring that the second slope be measured at the outer

14   edge, Luong admitted that the wall was vertical at the outer edge. (EXH. 140, an

15   annotated version of EXH. 117 [TR2 50:10-52:7].)

16   In summary, Ecojet's expert – after initially testifying that the second slope

17   could be measured toward the top of the fillet – admitted on cross-examination that

18   the slope near the top of the housing wall was vertical and had an undefined slope

19   and that an undefined number cannot be compared to any other number. And this

20   Court agreed that a vertical wall has no defined slope and, therefore, cannot be

21   compared to a reference slope.

22   Ecojet tried, during its direct examination to use the top of the fillet as the

23   second slope – a location that is not "at or adjacent the outer edge." But, as its own

24   expert witness later admitted, the claim language demands that the second slope be

25   near the top of the housing. Ecojet may not ignore the language of its own claim in

26   order to relocate the point of measurement of the second slope to the top of the fillet.

27   The Magna-JET devices therefore cannot be said to include the second slope claim

28   limitation found in claims 4 and 20.

**C.      Luraco's Magna-JET pumps do not contain the housing element.**

    **1.      The claimed housing element is not present in Luraco's**

       **Magna-JET products.**

  The housing element is discussed in multiple parts of claim 4, which is reprinted below, with the relevant parts underlined:

Claim 4. A jet pump sized and shaped for use in a basin of a pedicure chair or in a whirlpool bath wherein water is circulated, the jet pump comprising:

    a housing supporting a motor rotatably coupled to an impeller so as to drive the impeller about an axis, the housing comprising a shoulder configured to mount the housing to a wall of the pedicure chair or whirlpool bath so that a housing front part extends into the basin;

    a cap having an outer surface, an inner surface, and a circumferential rim, the cap releasably engaged with the housing front part so as to define an interior chamber between the cap inner surface and a housing inner surface of the housing front part, the cap comprising a plurality of spaced-apart holes formed through the cap and defining an inlet aligned with the axis, a wall being formed circumferentially on the inner surface of the cap surrounding the plurality of spaced apart holes of the inlet between the holes of the inlet and the circumferential rim, and an outlet opening between the inlet and the circumferential rim, the outlet opening having a nozzle thereabout, the nozzle formed on the outer surface of the cap;

    the housing inner surface comprising a flat portion that lies in a plane normal to the axis and has a reference slope, and an inclined portion disposed radially outwardly from the flat portion, a first point on the inclined portion having a first slope that is greater than the reference slope, the housing inner surface terminating at an outer edge and having a second slope at or adjacent the outer edge, the second slope being greater than the first slope;

1    the outer edge being circular, the inner surface of the cap releasably

2    engaging the outer edge so that <u>the outlet opening is aligned with the housing</u>

3    <u>inner surface</u> at or adjacent the outer edge; and

4    the impeller disposed within the interior chamber and comprising a

5    plurality of vanes that extend radially outwardly from the axis, the impeller

6    being rotatable by the motor to draw water axially through the inlet and direct

7    the water radially within the interior chamber so that the water flows over the

8    inclined portion and through the outlet opening and nozzle, whereby water is

9    projected from the nozzle into the basin.

10   In sum, it is apparent that the housing element must: a) support the motor; b)

11   include a shoulder for mounting the motor to the basin; c) extend into the basin; d)

12   releasably engage with the front cap to define a chamber; and  e) include a flat

13   portion that inclines and rises radially from the axis.

14   Defendant Luraco's Dura-JET products have the motor-supporting housing

15   limitation. But the Magna-JET motor-supporting housing does not extend into the

16   tub, and uses a magnetic coupling to drive an impeller situated inside a separate

17   impeller chamber inside the tub. The impeller housing is not part of the motor-

18   supporting housing. One cannot pick up the entire pump from the impeller housing.

19   Luraco asserts that its impeller housing is not the same as the "housing front

20   part" described in the Patent-in-Suit and that it is distinct from the motor-supported

21   housing. Ecojet's expert admitted during cross examination that the motor-supported

22   housing does not releasably engage with the cap. (TR1 81:21-82:9.) He also admitted

23   that the impeller housing did not support the motor. (TR1 82:19-83:7.) Eventually,

24   Ecojet's expert admitted that he considered the patent language mere

25   "wordsmithing" to require that the cap must engage with the motor-supported

26   housing. (TR1 83:22-84:21.)

27   Although Ecojet argued that the motor-supported housing that is mounted

28   outside the tub is the same part as the cap housing (also referenced as the impeller

housing) which resides inside the tub, Inventor Luong demonstrated that the Magna-JET impeller housing is separate from (and not part of) the motor-supporting housing during his own testimony:

| 19 | Q. | It does. Then why do you have to have your index finger |
| 20 | | on it to keep it on, to keep the two parts connected? Why do |
| 21 | | you have to use your index finger to keep them together? |
| 22 | A. | Because it would fall off. |

(TR2 43:19-22; *see also* TR2 16:7-18:11, 41:16-23.)

The Patent-in-Suit states that the housing element has an incline portion, but Inventor Luong admitted that the motor-supporting housing of the Luraco Magna-JET pump did not have an incline portion unless the impeller base was included. (TR2 43:5-23.) In summary, the Magna-JET's structure does not infringe independent claims 4 or 20 because the Magna-JET does not have a single motor-supported housing that also supports the impeller housing, has no incline portion, does not extend through the basin, and does not releasably engage with the spa motor's cap.

### 2. Ecojet consented – by its conduct at trial – to trying the claim element of the required housing in the Magna-JET products

Despite myriad objections directed to Defendant's examinations, ***Plaintiff Ecojet never once objected on the basis that the housing element construction was not before the Court***. Consequently, the Court should rule that the issue was tried by consent under Rule 15(b)(2), which allows litigants to move for inclusion of a claim or defense ***even after judgment***.

### 3. Luraco's *pleadings* support the trial of this claim element.

Ecojet posits that Luraco should not be allowed to dispute that the Magna-JET products include the housing element because this issue had not been raised before. However, Luraco never limited its defense to the slope and wall elements. In fact, Defendant stated from its First Amended Answer that "Luraco does not infringe and

1    has not infringed any of the claims of the Patent. ***Among other things***, the Accused

2    Products do not include the following limitations of independent claim 4 or claim 20

3    of the Patent." (Doc. 77 [emphasis added].)

4         Ecojet further argues that Luraco failed to list this particular element as

5    disputed in the parties' proposed pretrial order (Doc. 125-1). In fact, in the proposed

6    order's section listing the claims and defenses, Luraco states that it plans "to pursue

7    the following claims for a declaration from the Court that the Accused Products do

8    not literally infringe any claim of the '844 patent" without express limitation to the

9    wall and slope elements.

10        Luraco also stated that it "plan[ned] to pursue the following claims for a

11   declaration from the Court that the Accused Products do not literally infringe any

12   claim of the '844 patent by presentation of the cap ***and housing*** of the Accused

13   Products and supporting testimony." (Emphasis added.) Ecojet was put on notice that

14   the housing limitations would be challenged.

15        **D.    Ecojet abandoned 'willful infringement" and Luraco did not**

16        **willingly infringe.**

17        Pre-trial, Ecojet maintained that it would seek a finding of willful

18   infringement. But, when Luraco's witnesses addressed that allegation at trial, Ecojet

19   objected to the testimony as "irrelevant" and alleged that no such claim was ever

20   asserted against Luraco.

```
1    Q.   Do you believe -- did you -- were you deliberately
2    trying to copy the without figure?
3              MR. SHAEFFER:  Objection, Your Honor.  Again,
4    relevance.  We have no willful infringement claim.
5              THE COURT:  Sustained.
```

25                              (TR1 157:1-5.)

26        The Court sustained the objection, presumably on the basis of Plaintiff's

27   counsel's representation that Ecojet "ha[s] no willful infringement claim." The Court

28   also later recognized that Ecojet had abandoned the willfulness claim in ruling upon

one of Luraco's objections, and Ecojet's counsel agreed that "the only reason [that the line of questioning] would be relevant is to show the competitive nature between the parties at this time for purposes of the injunction." (TR1 166:16-25.)

A party cannot argue that evidence is irrelevant because the claim to which it is addressed has been abandoned, and then turn around and resurrect its earlier position later in its closing argument after acting to deny the opponent's attempt to provide evidence on the matter.

Luraco's Dr. Kevin Le testified that Luraco was aware of the 'patent pending' notation on the Lexor pump as Luraco was developing its products in the 2006 time frame, and that he sought out the published documents concerning the Lexor pump to ensure that Luraco's pumps did not infringe the asserted claims, and Luraco deliberately designed the Luraco pumps so they did not include the wall element, made the internal cavity much smaller, and easy to clean with the fillet, and eventually developed the magnetic coupling construction which came to dominate the industry. TR1 153:13-156:11.

### E.   Even if infringement is found, an injunction in this case is inappropriate

Luraco agrees with Ecojet that a court issues injunctions in patent cases based on equitable principles, as discussed in *Apple Inc. v. Samsung Electronics Co., Ltd.*, 809 F. 3d 633, 638 (Fed. Cir. 2015). For a permanent injunction, a claimant must show that: (1) it has suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, L.L.C.,* 547 U.S. 388, 391 (2006). As the following shows, no injunction is appropriate here.

1             **1.**       **Ecojet has suffered no irreparable injury.**

2        The parties agree that the Court cannot show "a likelihood of irreparable harm

3 cannot be shown if sales would be lost regardless of the infringing conduct." *Apple*

4 *Inc. v. Samsung Elecs. Co.*, 678 F.3d 1314, 1324 (Fed. Cir. 2012).

5        In Plaintiff's Closing Brief, Ecojet claims that "It is also undisputed that

6 Ecojet has lost sales as a result of this competition." In support of that claim, Ecojet

7 cites an exchange between its counsel and Ecojet's owner, repeated here:

```
11   Q.   Okay.  And just in terms of selling of jets themselves
12        independent of the whole chair, Luraco sells more than you,
13        you believe?
14   A.   Yes.
15   Q.   Who do you believe after Luraco sells the most jets?
16   A.   Ecojet, the second.
17   Q.   And do you believe the ability of Luraco to continue to
18        sell the Magna-Jet and its other products, other jet
19        products, is reducing your sales?
20   A.   Definitely.  Yes.
21   Q.   Can they compete with you?
22   A.   Yes.
```

                                (TR2 55:11–22.)

19        As the Court can observe, at no point did Ecojet connect any alleged lost sales

20 to the alleged patent infringement. Mr. Luong gave testimony only that Luraco sells

21 more pumps than Ecojet, and Magna-JET's continued sale reduces Ecojet's sale. In

22 fact, Luraco's Dr. Le gave testimony suggesting that Luraco's success comes from

23 its development of the magnetic coupling approach to the spa pump, and further gave

24 testimony that Luraco has an alternative cap (as it has no fillet) is being used and has

25 no impact on performance. (TR2 59:21-60:22.) Thus, Ecojet has provided no

26 evidence of any connection between the Patent and sales.

27        In fact, when Mr. Luong was directly asked to answer the question of how the

28 Patent and his sales related, he did not articulate any connection. (TR2 52:10-53:1.)

**2.     Monetary damages are perfectly adequate in this case.**

As already referenced above, Ecojet's owner testified as discussed above that Luraco is a market leader in the spa pump industry. Dr. Le testified that Ecojet copied Luraco's design (TR2 59:16-25), and is demanding more than a million dollars in damages for past royalties. The parties recognize that Luraco has already developed a new cap that is more obviously non-infringing.

Lastly, Ecojet made no attempt to show that Luraco cannot pay for any accidental infringement in the future. It may be that Ecojet can be more profitable at $15/infringing piece than by selling its own product. However, Luraco is obviously more likely to simply switch to its new cap design. There exists no reason given to this Court to think that money damages will not suffice for any future infringement.

**3.     A balancing of hardships militates against a permanent injunction.**

As Dr. Le testified, Ecojet has used this suit as marketing ammunition and sent out demand letters to the spa industry to threaten them with suit if they purchase from Luraco. Dr. Le also testified that Luraco has a cap design so that there is no benefit to Luraco or motivation to infringe. This is not a case where use of the claims is important to the function of the accused device. (TR2 60:7-61:10.)

**4.     The public interest is best served by without an injunction.**

Ecojet tends to be price-conscious which appears to target a lower-cost product, yet Ecojet has been unable to win in the market against a more expensive product. If this Court issues a permanent injunction, Luraco will be faced with explaining to the industry that the injunction applies only to the older product, and not the newer product, though to the average user, the products will be the same. Ecojet's practice of legal threats against customers to further damage Luraco's position will be effective even if meritless. The result of an injunction will be the improper injection of fear of litigation into purchasing decisions, causing sale to be diverted to a lower quality product that is no less expensive.

1

**F.    Ecojet's behavior merits its designation as an exceptional case.**

2

Luraco asks here for the Court to designate this suit an exceptional case

3

warranting attorney fees to be paid by Ecojet to Luraco. Chris Luong prosecuted this

4

patent now for more than ten years, but only in the last year inexplicably determined

5

that other inventors should be added to the application.

6

Of course, the parties might know why he added the inventors if Mr. Luong

7

had presented himself for deposition, but he cancelled twice at the last minute, and

8

Luraco was never able to take his deposition.

9

Then Mr. Luong decided that he could not be bothered by this suit and

10

actually come to the trial. Had Mr. Luong been available for trial on the first day, the

11

entire trial might have lasted only one day. (And then he showed up a half-hour late

12

even on the second day after this Court commanded his presence.)

13

Ecojet's real victory in this case has been the market disruption in sales made

14

by Luraco, as Mr. Le testified in this suit, as Ecojet has been to declare victory by

15

sending out letters stating that Ecojet is suing Luraco over patent infringement, as

16

though Ecojet's claims equate to a finding of nefarious guilt.

17

Lastly, Ecojet's witnesses have conveniently testified in such a manner as to

18

avoid having to answer obvious questions. Ecojet's Dr. Johnson testified that he had

19

no knowledge of the patent prosecution. (TR1 92:21-93:11; 144:9-145:17.)

20

However, Dr. Johnson later testified that he wrote a rebuttal report which did

21

responded to Dr. Pham's expert report, and which included discussion of the patent

22

prosecution. (TR1 144:21-145:17.) By pleading ignorance of the patent prosecution

23

of which he was clearly aware, Dr. Johnson avoided any questions regarding the

24

limits to the claim application, when such a discussion would be contrary to his

25

claimed expertise and reveal that Ecojet has no explanation of how a non-wall

26

construction can fulfill the wall element without the doctrine of equivalents.

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### G.     The ongoing re-examination of the Patent may make this case moot.

The Court should be made aware that an office action in the reexamination of the Patent-In-Suit has rejected claims 4 and 20. A separate notice of Notice of Rejection of Asserted Claims in Reexamination is or will be filed separately.

## IV.    CONCLUSION AND PRAYER

As above argued, the plaintiff has not shown that the Luraco accused products have any sort of wall "formed circumferentially on the inner surface of the cap" and cannot show that an interior housing's second slope is greater than a first slope, or show that the motor-supporting housing has an incline on it or connects to the cap. For these reasons, Luraco asks that the Court enter judgment on all claims made by Ecojet, and award attorney fees to Luraco due to the exceptional nature of this case.

Respectfully submitted,

Date:    January 22, 2018                NORRED LAW, PLLC

By:   /s/Warren Norred
Warren Norred

Attorneys for Defendant
LURACO, INC.